Eastern District of Kentucky
**F I L E D**

APR - 1 2016

AT LEXINGTON
ROBERT R. CARR
CLERK U.S. DISTRICT COURT

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
## CENTRAL DIVISION
## LEXINGTON

**UNITED STATES OF AMERICA**

**V.**                                        INDICTMENT NO. 5:16-CC-22-DCR

**ERIC CHRISTOPHER CONN,**
**DAVID BLACK DAUGHERTY, and**
**ALFRED BRADLEY ADKINS**

\*   \*   \*   \*   \*

**THE GRAND JURY CHARGES:**

### Background

At all times relevant to this Indictment:

### The Social Security Administration

1.      The United States Social Security Administration ("SSA"), was an agency

of the United States, which administered disability benefit programs under Title II and

Title XVI of the Social Security Act, as codified at Title 42, United States Code, Sections

401 and 1381, *et seq.* (the "Social Security Act").

2.      Title II of the Social Security Act established, among other programs, the

"Disability Insurance Benefits Program," which paid monthly cash benefits to eligible

individuals who had worked and paid Social Security taxes. SSA administered the

Disability Insurance Benefits Program. To have been eligible for monthly cash benefits

under the Disability Insurance Benefits Program, individuals needed a qualifying work

history and SSA needed to determine they were "disabled," as that term is defined by the Social Security Act. Auxiliary benefits were also available for the minor children and/or dependents of Disability Insurance Benefits recipients, based on the eligibility of the recipient. The Disability Insurance Benefits Program was funded primarily by Social Security tax revenues, and those funds were managed by the United States Department of the Treasury ("Treasury Department").

3.      Title XVI of the Social Security Act established the Supplemental Security Income ("SSI") Program, which provided monthly cash benefits to individuals who SSA found to be disabled, and who SSA found eligible based on financial need, considering both income and financial resources. SSI benefits are funded primarily by general tax revenues, and those funds were managed by the Treasury Department.

4.      The Social Security Act generally defined "disability" as: being not able to engage in any substantial gainful activity because of a medically-determinable physical or mental impairment that (1) was expected to result in death, or (2) had lasted or was expected to last for a continuous period of at least twelve months.

## SSA Disability Benefit Application and Payment Processes

5.      Individuals who sought disability benefits ("Claimants") completed SSA applications for Disability Insurance Benefits, SSI benefits, or both, and submitted the applications to SSA field offices. There were twenty-six SSA field offices in Kentucky, including the field office located in Prestonsburg, Kentucky ("Prestonsburg Field Office"). Upon processing applications for disability, the SSA field offices then

forwarded the applications, and any supporting documentation ("claims"), to the designated state agencies responsible for determining the eligibility of Claimants to receive SSA Disability Insurance Benefits, SSI benefits, or both.

6. Each state operated a disability determination agency that reviewed claims for disability benefits. These state agencies were federally funded and used federal regulations to make disability determinations on behalf of SSA. In Kentucky, the disability determination agency servicing Kentucky residents was Disability Determination Service ("DDS"), located in Frankfort, Kentucky, with an auxiliary location in Louisville, Kentucky.

7. Upon receiving applications, DDS assigned claims to medical examiners. These medical examiners, upon reviewing claims, requested and reviewed Claimants' previously identified medical records. If Claimants' medical histories were inadequate to determine disability, then medical examiners scheduled Claimants to receive consultative examinations by state contracted medical providers. These medical providers examined Claimants and prepared consultative examination reports. When appropriate, medical providers, in connection with consultative exams, completed medical source statements, commonly referred to as Residual Functional Capacity Assessment ("RFC") forms, which quantified Claimants' remaining abilities to perform work, or rather, measured the most Claimants could do despite their limitations. After reviewing Claimants' medical records, consultative examination reports, and any accompanying RFCs, medical

3

examiners decided whether Claimants were disabled, and, consequently, DDS either approved or denied their claims.

8.      If DDS approved Claimants' claims for Disability Insurance Benefits or SSI benefits, those decisions were transmitted to the SSA field offices that had originated the claim to initiate the process of disbursing disability benefits to approved Claimants.

9.      Conversely, when DDS denied claims, Claimants, through the SSA field offices that had originated the claim, were permitted to request DDS reconsider its findings. In reconsidering its findings, DDS reassigned claims to alternate medical examiners, who again reviewed Claimants' applications and supporting documentation. If upon reconsideration, DDS again denied benefits, Claimants were permitted to file, with processing SSA field offices, requests for hearings before SSA Administrative Law Judges ("ALJ") to again reargue claims for disability benefits.

10.      SSA field offices, upon receiving Claimants' requests for hearings, prepared and transmitted Claimants' claims, including applications and received medical documentation, to the appropriate hearing office within the SSA's Office of Disability Adjudication and Review ("ODAR"). Claimants' claims, upon arriving at the appropriate ODAR office, were then assigned to an ALJ.

11.      Until approximately October 2011, the Prestonsburg Field Office transferred the claims of Claimants who requested hearings to have those hearings with the ODAR hearing office located in Huntington, West Virginia ("Huntington Hearing Office"). Although the Huntington Hearing Office's primary location was in Huntington,

4

West Virginia, the Huntington Hearing Office maintained a satellite hearing office in Prestonsburg, Kentucky.

12.     Huntington Hearing Office ALJs reviewed claims, and if not deemed sufficient to award disability benefits on the documents as presented, ALJs then scheduled non-adversarial hearings allowing Claimants to present further evidence of their disability.

13.     The vast majority of ALJs typically held hearings to determine whether Claimants were disabled.  In certain limited instances, ALJs could determine there was sufficient evidence in the records submitted by Claimants to support findings of disability without holding hearings. In such instances, the SSA permitted ALJs to issue "on the record decisions" ("OTR decisions") awarding disability benefits.

14.     Upon reviewing Claimants' applications and supporting documentation and holding hearings, ALJs then decided to either award or deny disability benefits. ALJs' decisions were communicated in writing to the Claimants. If ALJs awarded disability benefits, SSA offices then initiated the processes of disbursing disability benefits to Claimants.

15.     Whether SSA awarded Disability Insurance Benefits or SSI benefits, disability benefits were disbursed from various accounts held at Federal Reserve Banks located throughout the United States. Federal Reserve Banks were financial institutions, as defined by Title 18, United States Code, Section 20.

16.     Claimants who were awarded disability benefits elected to receive benefit disbursements either through electronic funds transfers, typically via interstate wires, or by United States Treasury checks, via the United States Postal Service.

17.     Claimants awarded Disability Insurance Benefits were eligible to receive the same until they reached the designated age of retirement, between sixty-two and sixty-seven years of age, depending on their year of birth. When Claimants met the designated retirement age, they became eligible to and receive, and did receive Social Security retirement benefits. SSI beneficiaries who continued to qualify for SSI based on their limited income and financial resources were still eligible to receive SSI once they reached the age of sixty-five, regardless of whether they continued to suffer from a medical disability that precluded them from working at a substantial gainful activity level.

## SSA Third-Party Representatives

18.     SSA permitted Claimants to be represented by third parties, including both attorneys and non-attorneys, at any stage of the proceedings.

19.     If Claimants were awarded benefits and had agreed to representation by third-party attorneys, the third-party attorneys were awarded representatives' fees. These representatives' fees were either twenty-five percent of the total amount of benefits owed to Claimants, or the maximum amount permitted by the Social Security Act, between approximately $5,300 and $6,000. Similar to payments made to Claimants, third-party attorney representatives elected to receive their fees either through electronic funds

6

transfers, typically via interstate wires, or United States Treasury checks, via the United States Postal Service.

20.     In January 2004, the SSA began to implement a nationwide electronic disability claims process which included using an electronic folder to store claim-related data and images, and the opportunity to submit applications and documents to the SSA, via electronic wire transmissions. When the electronic claims process was implemented fully, the SSA maintained all official information and documents related to the claims in electronic format on servers in the National Computer Center in Woodlawn, Maryland.

21.     Beginning in or around December 2006, Claimants, and their third-party representatives, who sought disability benefits in Kentucky would upload documents directly to the electronic folders in Woodlawn, Maryland through an internet application called Electronic Records Express ("ERE"). When documents were submitted through ERE, a unique document identification number was assigned to the document. All documents submitted through ERE were maintained by the SSA in the National Computer Center in Woodlawn, Maryland.

## Medicare and the Kentucky Medicaid Programs

22.     The Medicare Program ("Medicare") was a federal "health care benefit program," as defined by Title 18, United States Code, Section 24(b), that provided benefits to persons who were over the age of sixty-five or disabled. Medicare was administered by the United States Department of Health and Human Services ("HHS") through its agency, the Centers for Medicare & Medicaid Services ("CMS").

7

23.     The Kentucky Medicaid Program ("Medicaid") was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), that provided benefits to low-income residents who met certain eligibility requirements. Medicaid was jointly funded by federal and state sources and administered by the CMS and by the Kentucky Cabinet for Health and Family Services, Department for Medicaid Services.

24.     While CMS administered the Medicare and Medicaid programs, the SSA played a substantial role in processing applications, making decisions, and paying premiums for both programs. Specifically, Kentucky Claimants, who were approved for Disability Insurance Benefits, became eligible for Medicare benefits after a twenty-four month waiting period. Prior to the lapse of the waiting period, the SSA sent notice to Kentucky Claimants informing them of their opportunity to deduct automatically Medicare premiums from the SSA benefits. Similarly, Kentucky Claimants, as they applied for SSI benefits with the SSA, simultaneously applied for Medicaid benefits. If the SSA approved SSI benefits for Kentucky Claimants, it also approved Medicaid benefits.

25.     Beneficiaries of the Disability Insurance Benefits Program and the SSI Program were insured by Medicare and Medicaid, respectively, but said medical insurance coverage was contingent on being legally eligible to receive Disability Insurance Benefits and SSI benefits.

8

## **Relevant Entities and Individuals**

26.     Eric C. Conn, PSC, established in 1995, was a professional service corporation maintaining a principal office in Floyd County, Kentucky, that primarily represented Claimants throughout the Eastern District of Kentucky, and elsewhere, seeking disability benefits.

27.     Branch Bank & Trust ("BB&T") was a financial institution within the meaning of Title 18, United States Code, Section 20, the deposits of which were insured by the Federal Deposit Insurance Corporation. BB&T was headquartered in Winston Salem, North Carolina, and maintained branch locations throughout the Eastern District of Kentucky, including Pike County, Kentucky. Between 2005 and continuing through the return of the Indictment, Eric C. Conn, PSC held accounts at BB&T, including account No. X0805 ("Business Account").

28.     **ERIC CHRISTOPHER CONN ("CONN")**, a resident of Pikeville, Kentucky, was an attorney licensed to practice law in Kentucky and practiced law at Eric C. Conn, PSC, of which he was president and the sole shareholder. In 2005, **CONN** opened and maintained the Business Account in Pike County, Kentucky and had signature authority on the Business Account through the return of the Indictment. **CONN,** in connection with Eric C. Conn, PSC, registered for appointed representative services with the SSA in December 2006, and in August 2007, was assigned ERE user identification: "xxxxxW07," and in August 2010, was assigned ERE user identification: "xxxxx5JG."

9

29. **DAVID BLACK DAUGHERTY ("DAUGHERTY")**, a resident of Myrtle Beach, South Carolina, was employed as an ALJ at the Huntington Hearing Office from 1990 through July 2011.

30. **ALFRED BRADLEY ADKINS ("ADKINS")**, a resident of Pikeville, Kentucky, was a board certified clinical psychologist who provided contractual psychological services to Eric C. Conn, PSC.

31. Unindicted Co-Conspirator A was a doctor of osteopathic medicine and a board certified orthopedic surgeon who provided contractual medical services to Eric C. Conn, PSC.

32. Unindicted Co-Conspirator B was a medical doctor and a board certified orthopedic surgeon who provided contractual medical services to Eric C. Conn, PSC.

33. Unindicted Co-Conspirator C was the office manager of Eric C. Conn, PSC, who had signatory authority on the Business Account from 2005 through June 28, 2011, and from June 5, 2013, through the return of the Indictment.

### COUNT 1
**Conspiracy to Commit
Mail Fraud and Wire Fraud
(18 U.S.C. § 1349)**

#### The Conspiracy and Its Objects

34. The factual allegations contained in paragraphs 1 through 33 of this Indictment are incorporated here by reference.

10

35.     Beginning in or around October 2004, the exact date being unknown to the Grand Jury, and continuing through on or about February 13, 2012, in Fleming, Floyd, Lawrence, and Madison Counties, in the Eastern District of Kentucky, and elsewhere,

**ERIC CHRISTOPHER CONN,**
**DAVID BLACK DAUGHERTY, and**
**ALFRED BRADLEY ADKINS**

conspired and agreed together and with other persons, both known and unknown to the Grand Jury, to commit certain offenses against the United States, that is:

a.     To knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and to knowingly deposit or cause to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing for the purpose of executing such scheme and artifice or attempting so to do, in violation of Title 18, United States Code, Section 1341; and

b.     To knowingly and with the intent to defraud devise and intend to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing that the pretenses, representations and promises were false and fraudulent when made, and to knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of

11

executing such a scheme and artifice, in violation of Title 18, United States Code, Section 1343.

### Purpose of the Conspiracy

36.     It was a purpose of the conspiracy for **CONN, DAUGHERTY, ADKINS,** Unindicted Co-Conspirator A, Unindicted Co-Conspirator B, Unindicted Co-Conspirator C, and others, to deprive the SSA of money and property, and to unlawfully enrich themselves and others. They did so by, among other things, submitting and causing the submission of false and fraudulent medical documentation to the SSA in order have the SSA: a) pay Claimants retroactive disability benefits; b) continue to pay Claimants disability benefits in the future; c) award Medicare and Medicaid benefits to Claimants; and d) pay **CONN's** representative fees.

### Manner and Means

37.     The manner and means by which the defendants and others sought to accomplish the objects of the scheme included, among others, the following:

        a.     **CONN**, in representing Claimants residing in Fleming, Floyd Lawrence, and Madison Counties, in the Eastern District of Kentucky, and elsewhere, frequently filed, or directed others to file, disability applications with the Prestonsburg Field Office, irrespective of the Claimants' residence, in an effort to ultimately bring the case before the Huntington Hearing Office;

       b.     At the Huntington Hearing Office, **DAUGHERTY** sought out cases wherein **CONN** represented Claimants and self-assigned those cases, or directed other SSA employees to assign those cases to **DAUGHERTY**;

       c.     In other instances, **CONN**, directly and indirectly, contacted **DAUGHERTY** and requested **DAUGHERTY** to assign specific cases to himself;

       d.     **DAUGHERTY** solicited **CONN** to submit falsified medical evidence so that **DAUGHERTY** could issue fully favorable decisions, via OTR decisions;

       e.     **ADKINS**, Unindicted Co-Conspirator A, and Unindicted Co-Conspirator B, at the direction of **CONN**, performed pretextual physical and mental evaluations on Claimants, and routinely prepared and signed evaluation reports indicating that Claimants had limitations considered disabling by the SSA, irrespective of Claimants' actual physical or mental conditions. **ADKINS**, Unindicted Co-Conspirator A, and Unindicted Co-Conspirator B were paid by **CONN** between approximately $300 and $450 per evaluation;

       f.     Prior to evaluations being performed by medical professionals, **CONN** pre-completed, and directed other non-medical professionals to pre-complete, RFCs indicating that Claimants had limitations considered disabling by the SSA, irrespective of Claimants' ability to perform work, and would provide the same to medical professionals, including **ADKINS**, Unindicted Co-Conspirator A, and Unindicted Co-Conspirator B, for signature. Typically, these pre-completed template

RFCs were randomly selected by employees of Eric C. Conn, PSC, and provided to the medical professionals, including **ADKINS,** Unindicted Co-Conspirator A, and Unindicted Co-Conspirator B, who signed them without amendment and returned them to **CONN** for submission to the SSA;

g.     **CONN,** on multiple occasions, fabricated for Unindicted Co-Conspirator B summary reports of Claimants' medical records indicating that Claimants had limitations considered disabling by the SSA, irrespective of the Claimants' ability to perform work, and provided the same to Unindicted Co-Conspirator B for signature. Unindicted Co-Conspirator B signed without amendment these fabricated summary medical reports prepared by **CONN** and returned them to **CONN** for submission to the SSA;

h.     **CONN,** on multiple occasions, fabricated for Unindicted Co-Conspirator B radiology reports, including X-Ray reports, of Claimants' radiological images, including X-Ray images, indicating that Claimants had limitations considered disabling by the SSA, irrespective of the Claimants' actual conditions, and provided the same to Unindicted Co-Conspirator B for signature. Unindicted Co-Conspirator B signed without amendment these fabricated radiology reports prepared by **CONN** and returned them to **CONN** for submission to the SSA;

i.     Medical professionals, including **ADKINS,** Unindicted Co-Conspirator A, and Unindicted Co-Conspirator B, signed the pre-completed RFCs,

14

purporting that they themselves prepared the RFCs based on their examinations of the Claimants and attesting to the RFCs' accuracy;

      j.    **CONN** submitted, and caused others to submit, through interstate wire transmissions, the medical evaluation reports, pre-completed RFCs, summary reports, and the radiology reports to **DAUGHERTY**, and other Huntington Hearing Office ALJs, in support of disability determinations, and did so in more than 2,000 cases pending before the Huntington Hearing Office;

      k.    On occasion, **DAUGHERTY** directed **CONN** on how to make the pre-completed RFCs more debilitating;

      l.    On occasion, **DAUGHERTY** directed **CONN** to create more versions and vary the use of the pre-completed RFCs submitted to avoid detection and potential scrutiny by the SSA;

      m.    **DAUGHERTY** authored OTR decisions granting disability benefits, and consequently awarding contingent Medicare and Medicaid benefits, to Claimants, citing the contents of the pre-completed RFCs, summary reports, and radiology reports provided by **CONN**;

      n.    Upon **DAUGHERTY**, or other ALJs, granting disability benefits to Claimants represented by **CONN**, the SSA, via the Treasury Department, mailed United States Treasury Checks to **CONN**, or to one of **CONN'S** representatives, for fees associated with representing Claimants;

15

o.     **CONN** and Unindicted Co-Conspirator C deposited, and directed others to deposit, the United States Treasury Checks into the Business Account, of which **CONN** and Unindicted Co-Conspirator C had signatory authority;

p.     On a near monthly basis, **CONN** and Unindicted Co-Conspirator C withdrew, and directed others to withdraw, approximately $9,000 to $9,500 in cash from the Business Account. These cash withdrawals were given, in part, to **DAUGHERTY**;

q.     **CONN** took action harmful to another person, specifically, interfering with that person's lawful employment and livelihood, with the intent to retaliate against that person for providing to a law enforcement officer truthful information relating to the commission and possible commission of Federal offenses;

r.     Upon learning of an ongoing Federal investigation, **CONN** destroyed, and directed others to destroy, records, documents, and tangible objects, associated with Unindicted Co-Conspirator B, and others, with the intent of concealing evidence of fraudulent conduct; and

s.     Based on these false and fraudulent submissions made to the SSA, **CONN, DAUGHERTY, ADKINS,** Unindicted Co-Conspirator A, Unindicted Co-Conspirator B, and Unindicted Co-Conspirator C intended that the SSA disburse retroactive and proactive disability benefits, an amount to exceed $600,000,000, to Claimants, residing in Fleming, Floyd, Lawrence and Madison Counties, in the Eastern District of Kentucky, and elsewhere, irrespective of the Claimants' actual entitlement to benefits.

16

All in violation of Title 18, United States Code, Section 1349.

## COUNTS 2-4
**Mail Fraud**
**(18 U.S.C. § 1341)**

38.     The factual allegations contained in paragraphs 1 through 33, and 36 through 37 of the Indictment are realleged and incorporated by reference as though fully set forth herein.

39.     On or about the dates specified below, in the Eastern District of Kentucky, and elsewhere, for the purpose of executing the above-described scheme to defraud the SSA and obtain money by materially false and fraudulent pretenses and representations,

**ERIC CHRISTOPHER CONN,**
**DAVID BLACK DAUGHERTY, and**
**ALFRED BRADLEY ADKINS,**

while aiding and abetting one another, did knowingly cause United States Treasury Checks, to be sent or delivered by any private or commercial interstate carrier, specifically, the United States Postal Service, and took and received therefrom United States Treasury checks for the purpose of executing such scheme and artifice or attempting so to do, with each mailing constituting a separate count:

| Count | Defendants | Claimant | Approx. Date of Mailing | Description of Mailing |
|---|---|---|---|---|
| 2 | CONN ADKINS | E.C. | June 1, 2011 | United States Treasury Check, bearing number 98505980, in the amount of $5,917.00, mailed from Philadelphia, Pennsylvania to Floyd County, Kentucky, via United States Postal |

| Count | Defendants | Claimant | Approx. Date of Mailing | Description of Mailing |
|---|---|---|---|---|
| | | | | Service. |
| 3 | CONN DAUGHERTY | B.T. | July 19, 2011 | United States Treasury Check, bearing number 48503284, in the amount of $360.48, mailed from Philadelphia, Pennsylvania to Floyd County, Kentucky, via United States Postal Service. |
| 4 | CONN DAUGHERTY | E.S. | September 1, 2011 | United States Treasury Check, bearing number 48609921, in the amount of $1,875.00, mailed from Philadelphia, Pennsylvania to Floyd County, Kentucky, via United States Postal Service. |

Each of the above is a violation of Title 18, United States Code, Sections 1341 and 2.

### COUNTS 5-7
### Wire Fraud
### (18 U.S.C. § 1343)

40.     The factual allegations contained in paragraphs 1 through 33, and 36 through 37 of the Indictment are realleged and incorporated by reference as though fully set forth herein.

41.     On or about the dates specified below, in the Eastern District of Kentucky, and elsewhere, for the purpose of executing the above-described scheme to defraud the SSA and obtain money by materially false and fraudulent pretenses and representations,

18

**ERIC CHRISTOPHER CONN,**
**DAVID BLACK DAUGHERTY, and**
**ALFRED BRADLEY ADKINS,**

while aiding and abetting one another, did knowingly transmit and cause to be

transmitted by means of wire communications in interstate commerce, certain writings,

signs, signals, pictures and sounds, namely, pre-completed RFCs, between Floyd County,

Kentucky, and Woodlawn, Maryland, with each transmission constituting a separate

count:

| Count | Defendants | Claimant | Approx. Document Submission Date | Description of Interstate Wire Communication |
|-------|-----------|----------|-------------------------------|---------------------------------------------|
| 5 | **CONN DAUGHERTY** | M.S. | April 1, 2011 | Document bearing identification number A1001001A11D01B2321 6F10703 submitted in Floyd County, Kentucky, and received in Woodlawn, Maryland. |
| 6 | **CONN DAUGHERTY** | O.H. | April 1, 2011 | Document bearing identification number A1001001A11D01B7095 5F13948 submitted in Floyd County, Kentucky, and received in Woodlawn, Maryland. |
| 7 | **CONN ADKINS** | E.C. | April 11, 2011 | Document bearing identification number A1001001A11D11B2435 5C28096 submitted in Floyd County, Kentucky, and received in Woodlawn, Maryland. |

Each of the above is a violation of Title 18, United States Code, Sections 1343 and

2.

## COUNT 8
## Conspiracy to Retaliate against a Witness, Victim, or Informant
## (18 U.S.C. § 1513(f))

42.     The factual allegations contained in paragraphs 1 through 33, and 36 through 37 of the Indictment are realleged and incorporated by reference as though fully set forth herein.

43.     Beginning on or about May 19, 2011, and continuing through on or about February 13, 2012, in the Eastern District of Kentucky, and elsewhere,

### ERIC CHRISTOPHER CONN

did knowingly and intentionally combine, conspire, confederate, and agree with other persons known and unknown to the Grand Jury, to take action harmful to another person, specifically, interfering with that person's lawful employment and livelihood, with the intent to retaliate against that person for providing to a law enforcement officer truthful information relating to the commission and possible commission of Federal offenses, namely, conspiracy to commit mail fraud and wire fraud, and other Federal criminal offenses, in violation of Title 18, United States Code, Section 1513(e); all in violation of Title 18, United States Code, Section 1513(f).

## COUNT 9
### Destruction of Records, Documents, or Tangible Objects
### in a Federal Investigation
### (18 U.S.C. § 1519)

44.     The factual allegations contained in paragraphs 1 through 33, and 36 through 37 of the Indictment are realleged and incorporated by reference as though fully set forth therein.

45.     Beginning on or about May 25, 2011, and continuing as a single offense through at least on or about June 23, 2011, in the Eastern District of Kentucky, and elsewhere,

### ERIC CHRISTOPHER CONN,

while aiding and abetting other persons known and unknown to the Grand Jury, did knowingly alter, destroy, mutilate, and conceal records, documents and tangible objects, namely, records and documents associated with **DAUGHERTY** and Unindicted Co-Conspirator B, RFCs, a computer tower, and other electronic hardware and media located at the Eric C. Conn, PSC principal office, with intent to impede, obstruct, and influence the investigation of a matter known and contemplated to be within the jurisdiction of the Office of the Inspector General for the SSA, a department and agency of the United States, in violation of Title 18, United States Code, Sections 1519 and 2.

21

## COUNTS 10-11
### False Statements
### (42 U.S.C. § 408(a)(3))

46.     The factual allegations contained in paragraphs 1 through 33, and 36

through 37 of the Indictment are realleged and incorporated by reference as though fully

set forth therein.

47.     On or about the dates specified below, in the Eastern District of Kentucky,

and elsewhere,

### ERIC CHRISTOPHER CONN and
### ALFRED BRADLEY ADKINS,

in a matter within the jurisdiction of the SSA, did knowingly and willfully make and

caused to be made false statements and representations of material fact to the SSA for use

in determining rights to payment under the Social Security Act, specifically for use in

determining rights to Disability Insurance Benefits, with each submission to SSA

constituting a separate count:

| Count | Defendants | Claimant | Approx. Submission Date | Description of False Statement |
|-------|-----------|----------|--------------------------|--------------------------------|
| 10 | **CONN ADKINS** | J.M.J. | April 21, 2011 | Defendants made and caused to be made false representations on a "Medical Assessment of Ability to Do Work-Related Activities (Mental)" form indicating that the reported functional abilities of Claimant J.M.J. were genuine assessments made by **ADKINS** based on his examination, when they were not genuine assessments nor |

22

| Count | Defendants | Claimant | Approx. Submission Date | Description of False Statement |
|-------|------------|----------|-------------------------|-------------------------------|
|       |            |          |                         | were the reported assessments made by **ADKINS**. |
| 11    | **CONN**   | J.R.J.   | April 21, 2011          | Defendants made and caused to be made false representations on a "Physical Medical Assessment" form indicating that the reported functional abilities of Claimant J.R.J. were genuine assessments made by Unindicted Co-Conspirator A based on his examination, when they were not genuine assessments nor were the reported assessments made by Unindicted Co-Conspirator A. |

Each of the above is a violation of Title 42, United States Code, Section 408(a)(3).

## COUNT 12
### Conspiracy to Launder Monetary Instruments
### (18 U.S.C. § 1956(h))

48.     The factual allegations contained in paragraphs 1 through 33, and 36 through 37 of this Indictment are realleged and incorporated by reference as though fully set forth therein.

49.     Beginning in or around February 2007, and continuing through in or around May 2011, in the Eastern District of Kentucky, and elsewhere,

### ERIC CHRISTOPHER CONN and
### DAVID BLACK DAUGHERTY

did knowingly, willfully, and unlawfully combine, conspire, confederate, and agree with others known, including Unindicted Co-Conspirator C, and unknown to the Grand Jury to

23

commit offenses against the United States, in violation of Title 18, United States Code, Section 1956, including:

        a.      To knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions in fact involved the proceeds of specified unlawful activity, knowing that the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i);

        b.      To knowingly conduct and attempt to conduct financial transactions affecting interstate commerce, which transactions in fact involved the proceeds of specified unlawful activity, knowing that the transactions were designed in whole or in part to avoid a transaction reporting requirement under State or Federal law, and knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(ii); and

        c.      To knowingly engage and attempt to engage in monetary transactions in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, in violation of Title 18, United States Code, Section 1957.

50.     For the purpose of the preceding paragraph, the specified unlawful activity consisted of mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343.

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 13-17
### Transactional Money Laundering
### (18 U.S.C. § 1957)

51.     The factual allegations contained in paragraphs 1 through 33, and 36 through 37 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

52.     On or about the dates set forth below, in the Eastern District of Kentucky, and elsewhere,

### ERIC CHRISTOPHER CONN

did knowingly engage and attempt to engage in each of the monetary transactions described in each of Counts 13 through 17, by, through, and to a financial institution, affecting interstate commerce, in criminally derived property of values greater than $10,000, as specified in each of Counts 13 through 17, and derived from specified unlawful activities, to wit: mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343. The following transactions originated out of the Business Account located in the Eastern District of Kentucky.

| Count | Approximate date | Amount | Monetary transaction |
|-------|------------------|--------|----------------------|
| 13 | July 5, 2011 | $20,434.92 | Check 38682 made payable to American Express |
| 14 | July 15, 2011 | $23,483.50 | Check 38826 made payable to American Express |
| 15 | July 27, 2011 | $11,923.94 | Check 1784 made payable to Premiere Pond & Spa |
| 16 | July 29, 2011 | $14,705.49 | Check 38914 made payable to Business Card World Points |
| 17 | August 1, 2011 | $96,052.00 | Electronic payment to American Express |
| | **TOTAL** | **$166,599.85** | |

Each of the above is a violation of Title 18, United States Code, Section 1957.

## COUNT 18
### Conspiracy to Structure Currency Transactions Involving a Financial Institution for the Purpose of Evading the Reporting Requirements
### (18 U.S.C. § 371)

53.     The factual allegations contained in paragraphs 1 through 33, and 36 through 37 of this Indictment are realleged and incorporated by reference as though fully set forth herein.

54.     Title 31, United States Code, Section 5313 requires any financial institution that engages in a currency transaction (*i.e.,* a deposit or withdrawal) in excess of $10,000 with a customer to report the transaction to the Internal Revenue Service on Form 4789, Currency Transaction Report ("CTR").

55.     CTRs often are used by law enforcement to uncover a variety of illegal activities. Certain individuals involved in these illegal activities are aware of such reporting requirements and take active steps to cause financial institutions to fail to file CTRs. These active steps are often referred to as "structuring." Structuring cash deposits

or withdrawals to avoid triggering the filing of a CTR by a financial institution is prohibited by Title 31, United States Code, Section 5324(a).

56.    Beginning in or around January 2006 and continuing through in or around May 2011, in the Eastern District of Kentucky, and elsewhere,

## ERIC CHRISTOPHER CONN

did knowingly, intentionally, and unlawfully combine, conspire, confederate and agree with other persons known, including Unindicted Co-Conspirator C, and unknown to the Grand Jury, among themselves and with each other to commit an offense against the United States, to wit: structuring or assisting in structuring currency transactions with one or more domestic financial institutions in the Eastern District of Kentucky, and elsewhere, for the purpose of evading reporting requirements, and did so while violating another law of the United States, to wit: conspiracy to commit mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1349, and other Federal criminal offenses, and as this conduct was part of a pattern of any illegal activity involving more than $100,000 in a twelve month period, in violation of Title 31, United States Code, Sections 5324(a)(3) and (d)(2).

## **Manner and Means**

57.    During the above-described time period, **CONN** and Unindicted Co-Conspirator C executed the structuring conspiracy by the following manner and means:

58.    In 2005, **CONN** opened and maintained the Business Account in Pike County, Kentucky and had signatory authority over the account through the return of the

Indictment. Between 2005 and June 2011, and June 2013 through the return of the Indictment Unindicted Co-Conspirator C was a signatory on the Business Account.

59.     During the conspiracy period, **CONN** and Unindicted Co-Conspirator C caused approximately sixty-five currency withdrawal transactions from the Business Account in amounts of less than $10,000 increments, which totaled approximately $607,000 in cash, in order to prevent or attempt to prevent BB&T from filing CTRs regarding those transactions, and did so while violating another law of the United States, to wit: conspiracy to commit mail fraud and wire fraud, in violation of Title 18, United States Code, Section 1349, and other Federal criminal offenses, and this conduct was part of a pattern of any illegal activity involving more than $100,000 in a twelve month period.

60.     It was further part of the conspiracy that **CONN** and Unindicted Co-Conspirator C advised one or more employees of Eric C. Conn, PSC to never deposit or withdraw more than $10,000 because the Internal Revenue Service would be notified.

## Overt Acts

61.     In furtherance of the conspiracy and to effectuate the objects and purposes of the conspiracy, **CONN**, Unindicted Co-Conspirator C, and others known and unknown to the Grand Jury, committed and caused to be committed the following overt acts, in addition to others, in the Eastern District of Kentucky, and elsewhere, to evade currency transaction reporting requirements:

| Structured Transaction Date | Check Number | Cash Withdrawn | From Account |
|---|---|---|---|
| April 8, 2011 | 37745 | $9,500 | Business Account |
| May 2, 2011 | 38054 | $9,500 | Business Account |
| May 27, 2011 | 38334 | $9,500 | Business Account |

All in violation of Title 18, United States Code, Section 371.

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT 1
### (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

62.    The factual allegations contained in Counts 1 through 18 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

63.    The Grand Jury further finds probable cause to believe that upon conviction of the offense in violation of Title 18, United States Code, Section 1349, set forth in Count 1 of this Indictment, **ERIC CHRISTOPHER CONN, DAVID BLACK DAUGHERTY, and ALFRED BRADLEY ADKINS** shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1349, and any property traceable to such property. The property to be forfeited shall include, but is not limited to, the following:

29

a. Money Judgment

Judgment in favor of the United States of America for the sum of at least $5,700,000.00 which represents the amount of property which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1349, for which **ERIC CHRISTOPHER CONN, DAVID BLACK DAUGHERTY, and ALFRED BRADLEY ADKINS** are jointly and severally liable.

64.    If any of the property described above, as a result of any act or omission of **ERIC CHRISTOPHER CONN, DAVID BLACK DAUGHERTY, and ALFRED BRADLEY ADKINS**:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek the forfeiture of any other property of **ERIC CHRISTOPHER CONN, DAVID BLACK DAUGHERTY, and ALFRED BRADLEY ADKINS** up to the value of the above forfeitable property and obtain a money judgment in an amount equal to the value of the

30

property involved in the violation.

## CRIMINAL FORFEITURE ALLEGATION AS TO
## COUNTS 2-4
## (18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

65.     The factual allegations contained in Counts 1 through 18 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

66.     The Grand Jury further finds probable cause to believe that upon conviction of the offenses in violation of Title 18, United States Code, Section 1341, set forth in Counts 2-4 of this Indictment, **ERIC CHRISTOPHER CONN, DAVID BLACK DAUGHERTY, and ALFRED BRADLEY ADKINS** shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1341, and any property traceable to such property. The property to be forfeited shall include, but is not limited to, the following:

a. Money Judgment

Judgment in favor of the United States of America for the sum of at least $16,305.81 which represents the amount of property which constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Section 1341, for which **ERIC**

**CHRISTOPHER CONN, DAVID BLACK DAUGHERTY, and ALFRED BRADLEY ADKINS** are jointly and severally liable.

67. If any of the property described above, as a result of any act or omission of **ERIC CHRISTOPHER CONN, DAVID BLACK DAUGHERTY, and ALFRED BRADLEY ADKINS**:

a. cannot be located upon the exercise of due diligence;

b. has been transferred or sold to, or deposited with, a third party;

c. has been placed beyond the jurisdiction of the court;

d. has been substantially diminished in value; or

e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek the forfeiture of any other property of **ERIC CHRISTOPHER CONN, DAVID BLACK DAUGHERTY, and ALFRED BRADLEY ADKINS** up to the value of the above forfeitable property and obtain a money judgment in an amount equal to the value of the property involved in the violations.

## CRIMINAL FORFEITURE ALLEGATION AS TO
### COUNTS 5-7
**(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))**

68. The factual allegations contained in Counts 1 through 18 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture

32

to the United States pursuant to the provisions of Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c).

69.     The Grand Jury further finds probable cause to believe that upon conviction of the offenses in violation of Title 18, United States Code, Section 1343, set forth in Counts 5-7 of this Indictment, **ERIC CHRISTOPHER CONN, DAVID BLACK DAUGHERTY, and ALFRED BRADLEY ADKINS** shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any and all property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 18, United States Code, Section 1343, and any property traceable to such property. The property to be forfeited shall include, but is not limited to, the following:

a. Money Judgment

Judgment in favor of the United States of America for the sum of at least $8,698.06 which represents the amount of property which constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Sections 1343, for which **ERIC CHRISTOPHER CONN, DAVID BLACK DAUGHERTY, and ALFRED BRADLEY ADKINS** are jointly and severally liable.

70.     If any of the property described above, as a result of any act or omission of **ERIC CHRISTOPHER CONN, DAVID BLACK DAUGHERTY, and ALFRED BRADLEY ADKINS**:

a.  cannot be located upon the exercise of due diligence;

b.  has been transferred or sold to, or deposited with, a third party;

c.  has been placed beyond the jurisdiction of the court;

d.  has been substantially diminished in value; or

e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek the forfeiture of any other property of **ERIC CHRISTOPHER CONN, DAVID BLACK DAUGHERTY, and ALFRED BRADLEY ADKINS** up to the value of the above forfeitable property and obtain a money judgment in an amount equal to the value of the property involved in the violations.

## CRIMINAL FORFEITURE ALLEGATION AS TO
## COUNT 12
## (18 U.S.C. § 982(a)(1))

71.     The factual allegations contained in Counts 1 through 18 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

72.     The Grand Jury further finds probable cause to believe that upon conviction of the offense in violation of Title 18, United States Code, Sections 1956(h), set forth in Count 12 of this Indictment, **ERIC CHRISTOPHER CONN and DAVID BLACK**

**DAUGHERTY** shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited shall include, but is not limited to, the following:

      a.  Money Judgment

           Judgment in favor of the United States of America for the sum of at least $5,173,601.13 which represents the amount of property involved in the conspiracy to commit money laundering, for which **ERIC CHRISTOPHER CONN and DAVID BLACK DAUGHERTY** are jointly and severally liable.

73.    If any of the property described above, as a result of any act or omission of **ERIC CHRISTOPHER CONN and DAVID BLACK DAUGHERTY**:

      a.  cannot be located upon the exercise of due diligence;

      b.  has been transferred or sold to, or deposited with, a third party;

      c.  has been placed beyond the jurisdiction of the court;

      d.  has been substantially diminished in value; or

      e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek the forfeiture of any other property of **ERIC CHRISTOPHER CONN and DAVID**

**BLACK DAUGHERTY** up to the value of the above forfeitable property and obtain a money judgment in an amount equal to the value of the property involved in the violation.

## CRIMINAL FORFEITURE ALLEGATION AS TO
## COUNTS 13-17
## (18 U.S.C. § 982(a)(1))

74.     The factual allegations contained in Counts 1 through 18 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture to the United States pursuant to the provisions of Title 18, United States Code, Section 982(a)(1).

75.     The Grand Jury further finds probable cause to believe that upon conviction of the offenses in violation of Title 18, United States Code, Section 1957, set forth in Counts 13 through 17 of this Indictment, **ERIC CHRISTOPHER CONN** shall forfeit to the United States of America pursuant to Title 18, United States Code, Section 982(a)(1), any and all property, real or personal, involved in such offense, and any property traceable to such property. The property to be forfeited shall include, but is not limited to, the following:

a.  <u>Money Judgment</u>

Judgment in favor of the United States of America for the sum of at least $166,599.85 which represents the amount of property involved in the violations of Title 18, United States Code, Section 1957.

36

76.     If any of the property described above, as a result of any act or omission of **ERIC CHRISTOPHER CONN**:

>    a.  cannot be located upon the exercise of due diligence;
>
>    b.  has been transferred or sold to, or deposited with, a third party;
>
>    c.  has been placed beyond the jurisdiction of the court;
>
>    d.  has been substantially diminished in value; or
>
>    e.  has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek the forfeiture of any other property of **ERIC CHRISTOPHER CONN** up to the value of the above forfeitable property and obtain a money judgment in an amount equal to the value of the property involved in the violations.

## CRIMINAL FORFEITURE ALLEGATION AS TO
## COUNT 18
### (31 U.S.C. § 5317(c)(1))

77.     The factual allegations contained in Counts 1 through 18 of this Indictment are hereby realleged and incorporated by reference for the purpose of alleging forfeiture pursuant to Title 31, United States Code, Section 5317(c)(1).

78.     The Grand Jury further finds probable cause to believe that upon conviction of the offense in violation of Title 18, United States Code, Section 371, set forth in Count 18 of this Indictment, **ERIC CHRISTOPHER CONN** shall forfeit to the United States

of America pursuant to Title 31, United States Code, Section 5317(c)(1), all property, real or personal, involved in the offense and any property traceable to such property. The property to be forfeited shall include, but is not limited to, the following:

      a. Money Judgment

> Judgment in favor of the United States of America for the sum of at least $607,000.00, which represents the amount of property involved in the conspiracy to structure currency transactions involving a financial institution to evade the reporting requirements.

79.     If any of the property described above, as a result of any act or omission of Defendant **ERIC CHRISTOPHER CONN**:

      a. cannot be located upon the exercise of due diligence;

      b. has been transferred or sold to, or deposited with, a third party;

      c. has been placed beyond the jurisdiction of the court;

      d. has been substantially diminished in value; or

      e. has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b), to seek the forfeiture of any other property of **ERIC CHRISTOPHER CONN** up to the value of the

above forfeitable property and obtain a money judgment in an amount equal to the value of the property involved in the violation.

                                        A TRUE BILL


                                        FOREPERSON


**LESLIE R. CALDWELL**
**ASSISTANT ATTORNEY GENERAL**
**CRIMINAL DIVISION**
**ATTORNEY FOR THE GOVERNMENT**

**DUSTIN M. DAVIS**
**TRIAL ATTORNEY**
**UNITED STATES DEPARTMENT OF JUSTICE**
**CRIMINAL DIVISION, FRAUD SECTION**

**WILLIAM A. ALFORD III**
**SPECIAL ATTORNEY**
**UNITED STATES DEPARTMENT OF JUSTICE**
**CRIMINAL DIVISION, FRAUD SECTION**

## PENALTIES

**COUNT 1:** Not more than 20 years imprisonment, $250,000 fine or not more than the greater of twice the gross gain or twice the gross loss, and 3 years supervised release.

**COUNTS 2-4:** Not more than 20 years imprisonment, $250,000 fine or not more than the greater of twice the gross gain or twice the gross loss, and 3 years supervised release.

**COUNTS 5-7:** Not more than 20 years imprisonment, $250,000 fine or not more than the greater of twice the gross gain or twice the gross loss, and 3 years supervised release.

**COUNT 8:** Not more than 10 years imprisonment, $250,000 fine, and 3 years supervised release.

**COUNT 9:** Not more than 20 years imprisonment, $250,000 fine, and 3 years supervised release.

**COUNTS 10-11:** Not more than 5 years imprisonment, $250,000 fine or not more than the greater of twice the gross gain or twice the gross loss, and 3 years supervised release.

**COUNT 12:** Not more than 20 years imprisonment, $500,000 fine or twice the value of the property involved in the transaction, whichever is greater, and 3 years supervised release.

**COUNTS 13-17:** Not more than 10 years imprisonment, $250,000 fine or twice the amount of the criminally derived property involved in the transaction, and 3 years supervised release.

**COUNT 18:** Not more than 5 years imprisonment, $250,000 fine, and 3 years supervised release.

**PLUS:** Mandatory special assessment of $100 per count.

**PLUS:** Restitution, if applicable.